Our next case on the call, the docket, is agenda number 4, case number 113690, People v. Bailey, counsel for the appellant. Please proceed. Good morning, your honors. My name is Heidi Lynn Lambros and I represent defendant appellant Darius Bailey. In 2009 in People v. Smith, this court unanimously held that upon request, a defendant who is charged with intentional, knowing, and felony murder is entitled to reject the general murder verdict form and instead have his jury be given the separate verdict forms on the two different mental states for first degree murder, knowing and intentional murder, and felony murder, where the murder mental state that the defendant is convicted or acquitted of would affect his sentence. This court in Smith recognized that the presumption arising under the one good count rule that a defendant convicted under a general murder verdict was convicted of more serious counts of murder cannot be maintained where the trial court refused the defendant's request for separate verdict forms which would have made the basis of the jury's findings clear. To correct this type of Smith error, this court said that the court must consider that general murder verdict not as a general murder verdict but as a finding of guilt on felony murder only and thus as an acquittal on the intentional or knowing murder counts and thus give the defendant all of the favorable sentencing consequences attached to that now presumed felony murder only verdict. Here as in Smith, Darius Bailey objected to the admission of a general verdict form for first degree murder and instead requested that his jury be given two separate verdict forms for the separate mental states of murder and I want to be very clear about this. What Mr. Bailey requested was number one, not a general murder verdict at all. He requested two separate verdict forms. One, guilty not guilty on intentional or knowing murder and two, guilty not guilty on felony murder. Just like the defendant in Smith, his request was denied by the trial court. Thus, Bailey's jury was given only the general first degree murder verdict form and allowed to find Bailey guilty of first degree murder without specifying which mental state they acquitted or convicted him on. Because Bailey was denied his opportunity for an express acquittal on the more serious forms of murder and because the sentencing consequences differed depending on the mental state of murder he was convicted or acquitted of, his general murder verdict pursuant to Smith must be interpreted as a finding of guilty on felony murder only and as an acquittal on the more serious forms of murder. And on what basis do you make the last statement? An outright acquittal of the intentional or knowing murder? What this court was concerned about, this court was concerned that a general verdict doesn't reflect, quote, whether the jury convicted or found the defendant guilty of each of the separate theories of murder. So by corollary, what Smith was concerned about and where the remedy came in under Smith was whether or not the felon basically, the defendant was convicted of felony murder. Here, by corollary, not by extension, but by application, it's important to know from Mr. Bailey what he wanted was his jury to expressly acquit him of the intentional or knowing murder counts. That's what would have affected his death penalty eligibility and that's what would have affected him not getting... But there's nothing specifically said in Smith that uses that language. Is that correct? It's correct. This court in Smith speaks of specific verdict forms, but it speaks of the reason for that is that we need to know the basis of why the jury convicted the defendant. So if we need to know whether the defendant was convicted of intentional or knowing murder or and of felony murder, we need to know those things because if Mr. Bailey, what he requested was, had his jury returned a verdict of guilty on felony murder only and expressly acquitted him of intentional or knowing murder, he would not have been eligible for the death penalty. Because he would have been acquitted of those mental states. And Smith speaks specifically of needing to know under which theory the defendant was not just acquitted of, but convicted of. And Mr. Bailey was denied his request. Thus, he was denied the remedy under Smith. Again, there's two separate consequences that are attached to Mr. Bailey's felony murder only verdict. The first consequence is much like the remedy in Smith. He's entitled to the vacation of his home invasion conviction as the state has conceded in the appellate court and as the appellate court found. Because he was not given the verdict forms as he requested and thus denied his opportunity for an acquittal of the more serious counts of murder, Mr. Bailey's felony murder only verdict requires vacation of his home invasion conviction. The second favorable sentence and consequence attached to Mr. Bailey's felony murder only verdict is that because he was denied the opportunity for an acquittal, his, again, his verdict is on felony murder only and is an acquittal of the intentional or knowing mental states, he is not eligible for the death penalty under 9-1B6. As this court almost predicted in P. B. Smith when it gave us an example of how Smith could be applied into a different circumstance. If a defendant is acquitted of the intentional or knowing mental states of murder, they are not eligible for the death penalty under 9-1B6. And this court basically, in Smith, predicted this outcome and predicted this circumstance and predicted the exact same facts that are presented in Mr. Bailey's case. Isn't the trial court entitled to find the culpable mental state for purpose of death penalty eligibility even when the defendant is convicted based on felony murder? When the defendant is convicted based only on felony murder, well, the presumption that arises from a general verdict form allows the trial court to presume that the defendant was convicted of the more serious mental states. What we have here is it's not just what the trial court's allowed to do. It's what was denied Mr. Bailey, which he was denied the opportunity to be acquitted of those mental states. And as Beck v. Alabama tells us specifically, had a fully instructed jury acquitted Mr. Bailey of a non-capital felony murder, he would not have been eligible for the death penalty regardless of who the sentencer was, judge or jury. So there would be a separate instruction on that? A separate instruction on... Mr. Bailey's jury would have been given two instructions, essentially. Right. Guilty, not guilty, intentional or knowing murder. Guilty, not guilty, felony murder. And once we know what the basis, the reason for why the jury convicted Mr. Bailey, let's just say they returned a felony murder only verdict and acquitted him of knowing intentional murder, there would have been no death penalty eligibility hearing under B-1-6. He would have been acquitted of those mental states that are necessary. Much like this court noted when a defendant is convicted in the Carrillo case. You know, it's kind of like the corollary of Beck v. Alabama. If you are acquitted at your trial and your verdict is returned by your jury, you're not guilty of those mental states, it doesn't matter who the sentencing judge is. So isn't the state's position, though, that the defendant here was still eligible for the death penalty or discretionary life imprisonment even if he was only convicted of felony murder? Is that their position? I believe their argument is twofold. Number one, I believe that there's a bit of a misrepresentation that Mr. Bailey's jury would have been given a general first-degree murder verdict form and a felony murder only verdict form. And that's why I think the state believes in where they make their argument that if the jury would have returned the felony murder only verdict and not the general verdict, then under the presumption of the one good count rule, that they would have been able to go into death penalty eligibility sentencing. The state overlooks that Mr. Bailey was denied his right to an acquittal on these more serious mental states. And now by Operation Smith, we have to treat it, basically give him the benefit of what he would have gotten, which in this case is to treat his verdict as felony murder only. And the state, I don't think the state is saying that had a jury expressly acquitted Mr. Bailey of the intentionally murder states that they could have, again, sought the death penalty based on those mental states. I'm not sure that that's what they're saying. We'll find out from the state, but I believe they're saying that the trial court is entitled to find the culpable mental states for purposes of death penalty eligibility even when the defendant is convicted of felony murder. And that's the best he's got here, right? Yes. I'm not talking about the best the state's got. That's the best the defendant has, that there's a conviction for felony murder, right? Yes, and an acquittal on the knowing and intentional counts, which is what he wanted. Do you agree with the state on that, that the trial court was able to make that determination even if it's felony murder? Does your argument fail then? Well, by operation of Smith, they can't be right. They cannot be right because it's not just simply that the judgment rendered was felony murder only. It's that Mr. Bailey was denied his right to an acquittal. And what they're not following it up with is that if he had been formally acquitted, if that jury had come back with not guilty on intentionally unknowing murder, no sentencer, whether judge or jury, could have found Mr. Bailey guilty of those mental states, he would have been acquitted of the crime, acquitted of those facts necessary to make him eligible for the death penalty under B-6. And that's what Beck tells. This is exactly like Beck v. Alabama. When you have a fully instructed jury who returns a verdict on only the lesser noncapital crime, no sentencer can find those facts at a death penalty eligibility hearing. It's also like the example in our reply brief that let's just say that the defendant was instead charged with two murders and then the jury returned a verdict of guilty on only one of the murders. They couldn't have used that eligibility factor of two murders because that defendant would have been acquitted of that. Or much, much simpler, let's just say the jury returned a verdict of second-degree murder. The judge at sentencing can't just ignore the jury's verdict and sentence them based on what they think. Again, that's kind of holding what the state's doing, is holding the eligibility findings, elevating them above the jury's actual verdict. And the unfairness from Smith is that Mr. Bailey was denied his right, as Smith holds, to have his jury render guilty or not guilty. Maybe they're relying on that the victim was older than 60 and the murder was exceptionally brutal or heinous. Well, that was the other factor that the state sought. They noticed the intent to shoot the death penalty on that ground, but they didn't seek it at the death penalty eligibility hearing. The state did not offer any evidence of that factor. And the state, all the state did was ask the court to take judicial notice of the verdicts, which now we know is an inappropriate general first-degree murder verdict and of home invasion and robbery, and that Mr. Bailey was over the age of 18. That's it. Well, is there anything in the record to suggest, as I think you're doing now, that the trial court treated the jury's general verdict as a conviction on the intentional or knowing murder counts? He would have had to have. He used the presumption under the one good count rule that the jury's general murder verdict, which encompasses all three, was an intentionally knowing murder verdict because if it would have been a felony murder only verdict and an acquittal on the more serious forms of murder, Mr. Bailey would not have been eligible for the death penalty. But going back to the B-16 aggravating factor, what the state's incorrect in that is not only did the state not seek it at eligibility, the trial court specifically found him taking judicial notice of the verdicts. And all the verdicts reveal is the general first-degree murder verdict, robbery, and home invasion. There's no mention of brutal and heinous and indicative of wanton cruelty in any part of the ruling of the trial court. The trial court clearly found two B-6 aggravating factors, murder in the course of a home invasion and murder in the course of a robbery. Those were the two aggravating factors the trial court found Mr. Bailey eligible for, not the B-16 aggravating factor. Didn't the trial court enter a judgment only for the felony murder count and indicate it was sentencing on the felony murder in this case? He did indicate that, but that's not the remedy Mr. Bailey is seeking. Mr. Bailey is seeking what he was entitled to in the trial court, which is he was entitled to have an express acquittal on the intentional and unknown mental states. And that express acquittal would have forbade the sentencer from making any determination that Mr. Bailey was convicted of those mental states. He's simply asking what Smith provides him, is that he should have been allowed to have his jury acquit him of these mental states. And the trial court denied him that relief. A pursuit of Peter B. Smith because Mr. Bailey was denied his request for separate verdict forms, which would have made the basis of the jury's findings about the mental state clear. And because the sentencing consequences differed, Mr. Bailey is entitled to this court now find that his murder verdict is on felony murder only and is an acquittal on the knowing and intentional counts, precluding his eligibility for the death penalty under B6 and thus preventing his naturalized sentence requiring remandment for resentencing. Thank you. Counsel for the appellee. Mr. Chief Justice, esteemed members of the court, counsel, my name is Douglas Harbath, I'm an assistant state's attorney and I represent the people of the state of Illinois. The trial court properly declined the defendant's request for separate verdict forms for felony murder because the trial court recognized that the defendant would have a separate eligibility hearing unlike people versus Smith. There were no sentencing consequences at the guilt phase of the defendant's trial because the defendant could be eligible for the death penalty under any theory of first degree murder. A-1. So is it your contention then if there had been separate verdict forms and the jury had returned a specific not guilty of knowing and intention, the trial, the judge as the trier of fact in the death penalty eligibility phase could find intentional and knowing? In that it's, I think that's fair to call that a hypothetical situation because I don't think the jury would ever have been given the opportunity to specifically acquit this defendant of knowing an intentional murder. Well, the IPI instructions, especially when you have a charge of home invasion and murder and the murder or death results, you've got the specific instructions called for a type A and a type B instructions and those instructions specifically say you give a verdict form on the felony murder of guilty or not guilty and you give three possible, up to three possible verdict forms on the other, guilty or not guilty or if murder, second degree murder is involved, that would be a possible. So why do you say he could never have been given a verdict form that found him specifically not guilty of intentional murder? Right. First, this Court has long eschewed multiple not guilty verdict forms and it said it as recently as Parker and it articulated that in Villareal as well. Multiple not guilty verdict forms foster juror confusion. They invite hung juries and in this case it's simply and entirely unnecessary because the specificity of the jury's verdict, specificity with regard to A1, A2 or A3, had no sentencing consequences at the guilt phase. And with regard to the type A, type B verdict forms that are in use, those are reserved exclusively for situations where a jury is instructed on second degree murder and that was the situation in Villareal. That is the only situation where a jury absolutely has to articulate whether or not it's convicting a defendant owing an intentional murder or felony murder and that's because a conviction for felony murder cannot be the basis for a conviction for second degree. A jury has to first find that it was under A1 or A2. So that is the situation I think and it's contrary to the defendant's arguments in his briefs. Type A, type B murder verdict forms would not apply in this case because. So is it your answer in answer to my hypothetical and contrary to what defense counsel argues, had a not guilty of knowing intention been given and had the jury returned that verdict, the trial court still could have found him guilty, death eligible, knowing an intentional. I think that would have a preclusive, that would be issue preclusion to use that expression. Had under that hypothetical had a prior fact at the guilt phase made an actual factual finding of not guilty as to knowing an intentional, then the state would be precluded from asking for that, the sentencing court to make that finding at the eligibility phase. So doesn't that seem that that verdict form should be given to the prior fact? Well, in this case, absolutely not. Because this case is very different from Smith. In Smith the sentencing consequences automatically flowed from the trial court's refusal to issue separate verdict forms. It was at that, and that's how this case is so different. It's so fundamentally different from Smith because in Smith you didn't have a death eligibility hearing. This case there was a death eligibility hearing and there was always going to be a death eligibility hearing. It was at that, it's at that phase where the parties litigate his eligibility. And the defendant is essentially asking to use the Smith decision as a sword. And I know that's trite and it's thrown out as a sword and a shield, but that's exactly what the defendant is trying to do where he's suggesting that, and he's said this numerous times, he was denied his opportunity for an acquittal as to the intentional knowing counts. But Smith doesn't provide an opportunity for an acquittal, an opportunity to prevent or avert a death eligibility hearing at the guilt phase. The defendant is going to have the opportunity to avoid that at the death penalty eligibility hearing. What the defendant is doing is not asking to simply apply Smith and say Smith dictates this result, and Smith says we have to treat it as a guilty on felony murder only and also an applied acquittal. First it didn't say anything about an applied acquittal, and it didn't need to in Smith. And this court doesn't need to do that in this case either. So what the defendant is actually trying to do is expand Smith by adding that language to actually treat, to have this court now treat not only the conviction upon a general verdict as guilty of felony murder only, but as an acquittal as to the more culpable counts. It's a little bit unclear to me what evidence the trial court pointed to from trial in making the eligibility findings. Could you elaborate on that? I'm happy to, Your Honor. And the trial judge's findings were, they were more than adequate. To the extent that the judge didn't make specific findings, I find that this was exceptionally brutal and heinous, or that this was an elderly man, this was carried out in a horrendous manner and go on and on. That's not in the record. And people can see the judge did not make those specific findings. But this court in countless decisions, in Bull and Shatner, Johnson. What findings did the judge make? The judge actually said that I find that the statutory aggravating factors, plural, have been proven beyond a reasonable doubt. And I also find that the murder was committed during. Did he identify those factors? I beg your pardon, Your Honor. Did he not identify those factors? He did not. I think this situation is no different from where the, I know this court has seen them, where the state's asking for consecutive sentences under the statute, and the judge then makes a finding consistent with the state's request or consistent with the argument that the state laid out. And the judge says, I agree with the state. So that's a situation where the judge hasn't made any specific findings, but in agreeing with the state or agreeing with the request as laid out. And I think it bears emphasizing that the state's notice of intent to seek the death penalty was very clear and succinct. The state sought the death penalty under two separate aggravating factors, 9B6 and 9B16. 9B6 is felony murder, a murder committed in the course of a felony. And 9B16 is based on the age of the victim and the exceptionally brutal and heinous nature of the offense. The fact that the state didn't argue that or go on at length at the eligibility hearing is not tantamount to the state abandoning it. The state never abandoned that aggravating factor. And the trial court made findings that were consistent, were actually identical to what a jury would make. Had it been posed with, had the defendant elected a jury for his eligibility hearing, the verdict form would have been identical, literally identical to what the trial judge stated in this case. The trial court, as part of that finding, begins the sentence with, I take judicial notice of the verdicts. And then I find the aggravating factors were met. I think that's very important. And I think it's the judge indicating that he's obviously taking judicial notice of the verdicts, and the verdicts themselves encompass all of the trial evidence. And this court is routinely, not only is it proper for the prior fact ineligibility to consider all the trial evidence, but that's encompassed in a judge's statement that I'm considering the guilt phase verdicts. So I think it's in that respect, all of the evidence that was introduced at trial, in addition to all the evidence that was introduced at the eligibility hearing, such as it was, was sufficient to support the trial judge's finding. And it's important to note, and I think Justice Thomas pointed this out, this is a separate hearing. It's a separate hearing entirely. And this court has used different phrases. It's where the state shoulders the burden all over again, or we start from a clean slate, and the state has to prove all these factors. So your position, counsel, is that you heard on this whole acquittal situation, that even if there was a separate verdict forum where the jury returned a verdict at the guilt phase, only as to the felony murder, right, so he was acquitted as to knowing an intentional murder. That would not preclude, even under that circumstance, it would not preclude at the second, the culpable stage that was rendered by the judge. It would not preclude that judge from finding knowing an intentional. Under your example, you're saying if the jury had specifically acquitted the defendant under knowing an intentional? Right, because counsel said there was no way then a judge would ever render at the eligibility phase knowing an intentional. I mean, I think that would have a preclusive effect, but I don't think that's our position. That would never be a separate not guilty verdict forum for knowing an intentional murder under the circumstances of this case. So even had the defendant's request been granted and had separate verdict forums for felony murder been issued, it does not follow that separate not guilty verdict forums for knowing an intentional murder would have been issued. And I think that's consistent with this Court's precedent, and most notably the Parker decision, where multiple not guilty verdict forums are not appropriate, and they would not have been given in this case. It's also important to note that the defendant at trials. So your argument isn't with the second half of her argument. You're just saying they're not entitled, the defendant isn't entitled to the multiple forums. That's where you're talking. I don't think you really got into your sword versus shield argument, but that's where you're talking about they're using it as a sword. Right. That's exactly right, Your Honor. And they're only asking for it for that reason, to take Smith and to say now I'm going to use that decision because the Illinois Supreme Court has said that I'm entitled to separate verdict forums for felony murder if I ask for them, that I can expand Smith and use that now to get an express acquittal. In this case, I don't think it would have been an express acquittal. At most it would have been an implied acquittal, and we explain in our brief why an implied acquittal would not apply under the circumstances of this case either. But to then use that as a sword to avoid, to avert, to preempt an eligibility hearing at the guilt stage, that's an, so the defendant says he was denied an opportunity for an acquittal. He wasn't entitled to an opportunity for an acquittal on the more culpable counts. He was entitled, under Smith, he was entitled to a jury's determination with regard to his guilt on felony murder, but he was not entitled under that authority to use that case to avoid a death penalty eligibility hearing. It's, the Smith decision is a shield against the unfair application of the one good count rule. That's what it is. It's not, this Court did not suggest in any manner that that decision should be used to avoid a death penalty eligibility hearing. Is there something inherently wrong with giving a specific guilty, and a specific not guilty verdict form for intentional annoying, and then the same thing for a felony murder? You say we don't approve it, and we shouldn't do it. It's confusing, but is it wrong if a trial judge had done it? Is that some type of structural error? I don't know that it would be a structural error. I mean, it would certainly, at a minimum, would invite, unanimity of verdict has never been required. I mean, that's elementary. And what it would, to do that, Your Honor, would actually require unanimity of verdict. And so while on one hand a jury is instructed in murder cases, and the state's attorneys always argue it when they argue those issues instructions, you don't have to agree on which theory. You don't have to agree that it was intentional, that he meant to kill the victim, that he knew about it, or that it was committed during the course of a felony. You only have to approve one of these, and you all don't have to agree. Well, to make these separate not guilty verdict forms for intentional annoying murder would be telling the jury something entirely different. They would be, you know, in the jury room agreeing that the defendant, beyond a reasonable doubt, no doubt he's guilty of first degree murder, but they can't agree on which theory. So the jury's going to be hung. And I think the biggest problem with that is that it's totally unnecessary to make that situation a reality in Illinois with how these juries need to be instructed. And it's for this reason, because in this case, cases involving an eligibility hearing, or from here on out will be an aggravating factors hearing since we don't have the death penalty. But it's unnecessary because the jury doesn't, we don't need to ascertain the specificity of the guilt phase verdicts to get to the eligibility phase. And as this court has long held, and most notably in Risley and Patterson and Taylor, even where a defendant is only charged with felony murder, he still can be eligible for the death penalty under 9b-6. So even if he's charged with felony murder, and even if he only pleads guilty to felony murder under multi-count indictment, as was the case in Smith, the state can still proceed to an eligibility hearing to prove anew whether or not it was an intentional or knowing murder. The defendant has consistently said, well, the judge made a presumption in this case. Otherwise he couldn't have found a defendant eligible for the death penalty. It's simply not true. As I just said, he could be eligible even if he was only convicted under felony murder. And there's not only evidence, not only is there no evidence of presumption, there's evidence to the contrary. I think as Justice Thomas pointed out, he was only, the judge in this case, only entered a conviction on felony murder, and then in the end only entered a sentence on felony murder. So in essence, the defendant received the remedy of Smith, which is that he didn't get a separate consecutive sentence for the predicate felonies to the felony murder. Are you relying at all on the aggravating factor of the age of the victim? Yes, Your Honor. Is that in the record? A specific finding? A specific finding. The trial judge did not say that I'm finding that the victim was 80 years old, that this was exceptionally brutal. No, I concede that those statements are not in the record. But neither are any other facts, specific facts. And again, under Bull and Shatner and other cases, the judge made the requisite findings. And the proof regarding the victim's age in this case is amply proved in the record. I mean, a life-death witness said he was 80. The post-mortem report indicates his date of birth, showing that he was 80. And, of course, the facts of this case, the brutality and the viciousness of this case cannot be overstated. This was an 80-year-old man whose home was broken into. He was surprised to see the defendant in his living room with his house trashed. And he attacked him, tied him up, and strangled him to death, stole his checkbook and his car. I mean, it is quintessentially a brutal and heinous case. The point, I think the main point the defendant is trying to do is expand Smith. And I think that's contrary to this Court's decision, certainly in Davis, where it actually used the word narrow to describe the decision in Smith. It is a narrow decision. This Court, in that case, expressly upheld the validity of the one good count rule. It just said that the one good count rule cannot be used to a defendant's detriment. When sentencing consequences will differ depending on the specificity of the guilt phase verdicts. And in this case, the specificity of the guilt phase verdicts had nothing to do with whether or not the defendant would eventually be found or could be found eligible for the death penalty. And I would like to finally remark about the implied acquittal. Certainly, the defendant seems to think that the jury would have been able to specifically acquit him under A1 or A2, and I've explained how that's just not the case. But there's no implied acquittal. This Court has long held that an implied acquittal only exists where the jury convicts the defendant of a lesser-included offense and is silent as to the greater. Well, in this case, the defendant was convicted of the only charged offense, the single offense of first-degree murder. And this Court has long referred to first-degree murder, as recently as Smith itself. It's a single offense. And the defendant in his reply brief refers to felony murder as a lesser-included offense of first-degree murder, of knowing and intentional murder. That is simply not true. It is one single offense. And an acquittal, an implied acquittal, implies the actual rejection, the actual resolution in a defendant's favor of a particular issue, and that simply would not have been the case at the conclusion of the guilt phase. So for all those reasons, if there are no further questions, for those stated in the people's brief, we'd ask that this Court affirm the judgments below. Thank you. Thank you. This Court in Smith specifically found that when a defendant is charged in a multi-count indictment, when the State seeks a guilty verdict on all three forms of murder, which they did in this case, intentional, knowing, and felony murder, and the defendant requests separate verdict forms, one for intentional and knowing and one for felony murder, he's entitled to those verdict forms if the sentencing consequences would have been favorable to him. The State admits the essential point of this entire case, that had Mr. Bailey's jury acquitted him of the intentional and knowing murder states, he was not eligible for the death penalty. It's very simple. That was a prerequisite, a conditioned precedent to his eligibility under B-6, is that his jury return a verdict that would allow that finding to be made a death penalty eligibility. Mr. Bailey just requested what this Court already provided him with in Smith, which is separate verdict forms. I quote, the presumption is a violation of due process to deny a defendant the opportunity to have his jury decide his theory of defense, i.e., that at most he is guilty of the less culpable offense of felony murder, and then sentence the defendant based on that presumption that he was convicted of the more serious offense of intentional murder, which carries the more severe sentencing consequences. That's a direct quote from Smith. That's exactly what Mr. Bailey is asking for, is for this Court to apply Smith to a circumstance it already discussed in Smith, which is for death penalty eligibility. And again, I think the State knows this, and the fact that it wouldn't have been confusing to this jury to get these verdict forms. It's very simple. Guilty or not guilty of intentional murder, guilty or not guilty of felony murder. They could have found him guilty of all the forms of murder, or one or the other, but we don't know why this jury convicted Mr. Bailey. Smith did not require separate not guilty forms, did it? Smith says separate verdict forms, which I'm assuming is shorthand for guilty or not guilty of intentional murder, guilty or not guilty of felony murder, because otherwise it makes no sense to have a general verdict and then a felony murder verdict would have resulted in inconsistencies in the verdict themselves. Because if you were to acquit, this should send a jury to return something confusing like guilty of felony murder but not guilty under a general verdict form. That wouldn't have made any sense. What this Court obviously meant when it talked about different theories was dividing up the two different mental states for murder. Do we need to be concerned about what I think Mr. Horvath raised if we had these four verdict forms, that a jury might agree it was felony murder and maybe half of them thought it was intentional murder, there would not be a not guilty, so you've got verdict forms that are not being returned? Or if half the people thought it was a felony murder and half thought it was an intentional knowing, would that be a hung jury? Well, this Court addressed the question of shad, which is what I believe my opponent is talking about, is that generally you don't need to know which mental state, unless the sentencing consequences would differ. And again, if a jury, and again, the presumption here is that my client would have been convicted of some form of murder. So, you know, that's where Smith operates. He's not asking for a new trial or to be retried. He's asking for this Court to apply the remedy that he wanted, which is to have possibly his jury acquit him of the more serious forms of murder which would not have made him death eligible. I mean, the confusion, obviously this jury would have convicted him of something or of both forms of murder, which is entirely possible. It's just the presumption in shad that we don't need to know which theory cannot be maintained where a defendant requests those separate verdict forms and the sentencing consequences would differ based on which, under which theory of murder the jury found him guilty of. Mr. Bailey's not asking for an extension of Smith. We're just asking for Smith to be applied in his circumstance and in his case. I just would like to make one more point about the B-16 aggregating factor. This Court's correct. There's nothing in the record that shows that the trial judge made any findings of fact with regard to the B-16 factor. In fact, interestingly, the State didn't even ask the judge to take judicial notice of the facts of the case, only of the verdicts of the case. And these verdicts are only the improper general verdict form and home invasion and robbery. So it was clear that there was nothing in this record to stand to the State's claim that Mr. Bailey is found eligible under the B-16 aggregating factor. No further questions? Thank you. Ms. Lambros, Mr. Harvath, we thank you for your arguments today. Case number 113690, People v. Bailey, is taken under advisement as Agenda Number 4. Mr. Marshall, the Illinois Supreme Court stands adjourned until Wednesday, January 16, 2013, 9 a.m.